**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                                         :
LAMONICA CROSS,                          :
                                         :   CIVIL ACTION NO. 11-3726 (MLC)
     Plaintiff,                          :
                                         :       MEMORANDUM OPINION
     v.                                  :
                                         :
STATE OF NEW JERSEY,                     :
DIVISION OF CRIMINAL JUSTICE,            :
                                         :
     Defendant.                          :
                                         :
```

**COOPER, District Judge**

The plaintiff, Lamonica Cross ("plaintiff"), brought this action alleging claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 et seq. ("NJLAD"). (Dkt. entry no. 1, Compl. at ¶¶ 4-5.) The defendant, State of New Jersey, Division of Criminal Justice ("DCJ"), now moves to dismiss (1) the Title VII claim insofar as it pertains to alleged discrimination occurring before 2009, on the basis that such claim is barred by the applicable statute of limitations, and (2) the NJLAD claim, on the basis that DCJ is immune from suit under the NJLAD. (Dkt. entry no. 6, Mot. to Dismiss at 2.)

The plaintiff opposes the motion with respect to the Title VII claim, but concedes that her NJLAD claim must be dismissed because the DCJ has raised its entitlement to immunity from suit

under the Eleventh Amendment.  (Dkt. entry no. 9, Pl. Br. at 1.) The Court determines the motion on the briefs without an oral hearing, pursuant to Local Civil Rule 78.1(b).  For the reasons stated herein, the Court will grant the motion.

### BACKGROUND

The plaintiff, who identifies herself as an "African American female," was hired by the DCJ as a State Investigator II in August 2000.  (Compl. at ¶¶ 8-9.)  The title of this position was changed to Detective I in 2008.  (Id. at ¶ 10.)  She alleges that prior to her employment at DCJ, she worked as a municipal police officer for over ten years, and when she left that position, she "was on a Civil Service List of Eligibles for the title of Sergeant."  (Id. at ¶ 11.)

The plaintiff alleges that "from 2007 to February 2008 [she] was harassed and treated in a disparate fashion by her immediate supervisor, who was a white male."  (Id. at ¶ 12.)  She further states that "after [she] protested to a second line supervisor the aforesaid treatment, an internal EEO [Equal Employment Opportunity] complaint . . . was filed pursuant to a formal EEO policy that was a term and condition of her employment."  (Id. at ¶ 13.)  The plaintiff asserts that despite her repeated inquiries as to the status of the internal EEO complaint, "on account of [her] race and gender . . . the complaint was never investigated."  (Id. at ¶ 14.)

2

The plaintiff further alleges that prior to 2008, DCJ made promotion decisions without open competition, such that "many times . . . white males" from outside agencies "would be brought in and awarded . . . supervisory position[s]," resulting in "many non-minority individuals with less qualifications and experience" than, for instance, the plaintiff, being awarded promotions for which the plaintiff would have been eligible.  (Id. at ¶¶ 15-18.)

The plaintiff asserts that in 2008, concurrent with the renaming of her position, DCJ "announced that promotions to Sergeant, would be subject to open competition."  (Id. at ¶ 20.)  She alleges that on July 23, 2009, she applied for the position of Sergeant-State Investigator, in the first implementation of the "open competition" procedure.  (Id. at ¶¶ 21-22.)  She alleges that while she passed the first and second stages of the four-stage process, a credential review and a written interview, the third stage, a panel interview, did not go well for her. (Id. at ¶¶ 23-25.)  Specifically, she notes that:  (1) the panel consisted of ten persons, of whom eight were white males; (2) the questions asked by the panel were "very general" and "would not be reflective of a candidate's credentials or knowledge or abilities and would permit the panelists to make subjective determinations of each candidate"; and (3) certain questions were designed to disclose whether the candidate had previously made any complaints, such as EEO complaints, against the DCJ.  (Id. at

3

¶¶ 26-29.)  The plaintiff was informed on September 29, 2009, that she had not passed the third stage and therefore was no longer under consideration for the promotion to Sergeant.  (Id. at ¶ 30.)

The plaintiff alleges that ninety-six people applied for the promotion in question, of whom six were black women, and that "no black female made the final promotional list."  (Id. at ¶ 31.)  She alleges that "less qualified male applicants" as compared to the plaintiff's qualifications were "moved forward in the process and eventually promoted."  (Id. at ¶ 32.)  The plaintiff suggests that, based on a conversation she had with one of the panel interviewers, the plaintiff may have been perceived unfavorably due to the plaintiff previously filing a complaint that her supervisor was harassing her.  (Id. at ¶¶ 33-35.)  She states that at the time she was rejected for a promotion, only one out of seventy-two superior officers was a "black female."  (Id. at ¶ 37.)

The plaintiff filed a complaint of discrimination based on both the original allegations regarding her supervisor that she claims were never investigated, as well as the allegations regarding the failure to promote.  (Id. at ¶ 38.)  She alleges that although the complaint "was acknowledged as received by the EEO office on December 30, 2009," it was not investigated within 120 days, as required by formal administrative regulation

4

applicable to the DCJ as a state agency.  (Id. at ¶¶ 38-41; see also Pl. Br. at 9 (citing N.J.A.C. § 4A:7-3.2).)

The plaintiff asserts that DCJ violated Title VII by discriminating against her by altering the terms and conditions of her employment on account of her sex and race.  (Compl. at ¶ 45.)  She seeks, inter alia, compensatory damages, including front and back pay; injunctive relief compelling DCJ to maintain an environment free from discriminatory treatment and to afford the protections of its EEO policy to all persons, regardless of race and gender; and injunctive relief awarding the plaintiff a promotion to a superior title.  (Id. at 8.)

## DISCUSSION

**I.   12(b)(6) Motion to Dismiss Standard**

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

5

misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the 'pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)).

The Court, in evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, may consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**II. Title VII**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against, any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Further, it is unlawful for an employer to "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an

employee, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(2).

### III. Analysis

#### A. Equitable Tolling of Harassment Claim

##### 1. Parties' Arguments

DCJ asserts that because Title VII requires a plaintiff to first pursue certain administrative remedies, which the plaintiff here did by filing an EEO complaint on June 8, 2010, any allegations occurring prior to August 12, 2009, are untimely pursuant to the 300-day statute of limitations.  (See dkt. entry no. 6, DCJ Br. at 4 (citing 42 U.S.C. § 2000e-5(e)(1); Cortes v. Univ. of Med. & Dentistry of N.J., 391 F.Supp.2d 298, 310 (D.N.J. 2005)).)  See also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002); Bishop v. New Jersey, 84 Fed.Appx. 220, 225 (3d Cir. 2004) (rejecting "continuing violation" doctrine and holding that because plaintiffs' EEOC charge was not filed within 300 days of promulgation of list of eligible applicants for supervisory position, it was time-barred, and discrimination claims brought under, inter alia, Title VII, were properly dismissed).

The plaintiff acknowledges that "obviously the plaintiff's charges were filed with the EEOC more than 300 days after the asserted acts of harassment by a supervisor."  (Pl. Br. at 6.) However, she contends that she is entitled to equitable estoppel of the statute of limitations because "she was promised her

7

complaint concerning the harassment would be investigated but that promise was never kept in spite of numerous inquiries from her," and she suggests that "as a law enforcement officer," she was reasonable in taking the "promise of a full and fair investigation from her superiors seriously" and being reluctant to "move [the investigation] 'out of house.'"  (Pl. Br. at 7.) DCJ contends that the plaintiff has not established that she is entitled to equitable tolling under the applicable standard. (Dkt. entry no. 10, DCJ Reply Br. at 2-5.)

The parties do not dispute that the plaintiff's failure-to-promote claim, based on a discrete act occurring when she was informed she would not be considered eligible for the supervisory position on September 29, 2009, is timely.

### 2.  Court's Ruling

The time limitations set forth in Title VII are subject to equitable tolling. <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1387 (3d Cir. 1994); <u>see also</u> <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982).  The doctrine of equitable tolling "functions to stop the statute of limitations from running where the claim's accrual date has already passed," and applies in three principal situations: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her

rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Oshiver, 38 F.3d at 1387. In the employment discrimination context, "the equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant <u>actively misled the plaintiff</u> respecting the reason for the [adverse employment action], and (2) this deception caused the plaintiff's non-compliance with the limitations provision." Id. (emphasis added).

The Court finds that the plaintiff's vague allegations that she "made repeated inquiries" as to the status of her EEO complaint do not support a plausible inference that she is entitled to the benefit of equitable tolling of her Title VII claim insofar as it concerns conduct allegedly occurring prior to the limitations period.  The allegations make clear that the plaintiff knew of the alleged harassment and disparate treatment at the time they occurred in 2007 and 2008, and nothing about her "inquiries" regarding the internal investigation should have prevented her from actively pursuing her claim in a timely manner.  Moreover, she does not actually allege any misrepresentation made by DCJ; she simply alleges that "the complaint was never investigated even though the Plaintiff made repeated inquiries as to its status."  (Compl. at ¶ 14.)  This does not amount to the type of active deception required to

invoke equitable tolling.  See, e.g., Hill v. U.S. Gen. Servs. Admin., No. 05-2092, 2008 WL 4371761, at *4 (D.N.J. Sept. 17, 2008); see also Robinson v. Dalton, 107 F.3d 1018, 1023 (3d Cir. 1997) (stating that plaintiff-initiated phone call inquiring about pending EEO complaint did not entitle plaintiff to equitable tolling, because it did not prevent him "in an 'extraordinary way' . . . from asserting his rights").  Accordingly, the Court will grant the motion insofar as it seeks to dismiss the plaintiff's Title VII claim as to allegations of conduct occurring prior to August 12, 2009.

    **B.    Discovery Regarding Pre-Limitations Period Alleged Discrimination**

The plaintiff, in her opposition brief, requests a declaration that she be permitted to obtain discovery as to discrete acts occurring before the limitations period as relevant to the failure-to-promote claim.  (Pl. Br. at 8-9.)  DCJ "takes no position" regarding this point, but contends that the plaintiff's discovery argument is premature, as the current motion does not involve discovery.  (DCJ Reply Br. at 5.)

The Court concurs with DCJ's assessment of this matter.  Any potential dispute regarding discovery should be presented to the Magistrate Judge by formal motion at the appropriate juncture, not preemptively addressed by this Court at the current procedural posture.

**C.  Standalone Claim for Failure to Investigate Internal EEO Complaint**

**1.  Parties' Arguments**

The plaintiff further argues that she has stated a claim for a Title VII violation based upon the failure to process the plaintiff's EEOC complaint, filed on December 30, 2009, concerning her allegations surrounding the failure to promote, and that such claim should not be dismissed.  (Pl. Br. at 9-10; Compl. at ¶¶ 38-39.)  She contends that insofar as the internal investigation process constituted a term and condition of her employment, the failure to receive a timely response to her complaint was motivated by the fact that "its subject matter raised issues of racial and gender discrimination in the form of the preference for white males in respect to promotions," such that "Title VII was violated."  (Pl. Br. at 10.)

DCJ argues that this claim is part of her time-barred hostile work environment claim, and cannot constitute a separate viable claim under Title VII.  (DCJ Reply Br. at 5.)  DCJ contends that in any event, Plaintiff failed to exhaust administrative remedies as to her claim, insofar as her EEO complaint was investigated by the Attorney General's Office of Equal Employment Opportunity; that she was advised by letter dated February 15, 2011, that the investigation had determined that her claims were not substantiated; and that despite being given notice of her right to appeal those findings, the plaintiff

failed to pursue such appeal, instead filing the Complaint in this action on October 24, 2011.  (Id. at 6.)

### 2. Court's Ruling

The Court finds that the plaintiff has not stated a standalone claim for violation of Title VII based on the alleged failure or delay of "the State . . . to process the plaintiff's second [EEO] complaint."  (Pl. Br. at 10.)  The Complaint is devoid of any attribution to the delay of a discriminatory motive or animus; it simply states that (1) she "filed per State policy a complaint of discrimination," (2) the complaint "was acknowledged as received by the EEO office on December 30, 2009"; (3) the EEO policy of DCJ "requires that all complaints be investigated within 120 days," and (4) despite this requirement, "the Plaintiff's second EEO complaint was not investigated within the promised period."  (Compl. at ¶¶ 38-41.)  In the alternative, such claim is subject to dismissal on the basis that the plaintiff has failed to exhaust her administrative remedies with respect to her second EEO complaint.  (See DCJ Reply Br. at 5.) See Wilson v. MVM, Inc., 475 F.3d 166, 176 (3d Cir. 2007) (stating that plaintiffs must exhaust grievance process available to them under a collective bargaining agreement unless "unavailable or patently inadequate" before seeking relief under the Rehabilitation Act or 42 U.S.C. § 1983).  Plaintiff has not alleged facts showing that the internal EEO procedure was

12

"unavailable or patently inadequate," only that the investigation was delayed, and further has not alleged that she exhausted remedies available pursuant to that procedure.  Therefore, to the extent the plaintiff seeks in her opposition brief to have the Court recognize a separate claim under Title VII for a delay in investigating her second EEO complaint, the Court will decline to do so.

## CONCLUSION

The Court, for the reasons stated <u>supra</u>, will grant the motion.  The Complaint will be dismissed, except with respect to the plaintiff's failure to promote claim.  The Court will issue an appropriate order.

                                            s/ Mary L. Cooper
                                            **MARY L. COOPER**
                                            United States District Judge

Dated:    January 26, 2012