NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAMONICA CROSS, | : |
| Plaintiff, | : CIVIL ACTION NO. 11-3726 (MLC) |
| v. | : **MEMORANDUM OPINION** |
| STATE OF NEW JERSEY, DIVISION OF CRIMINAL JUSTICE, | : |
| Defendant. | : |

**COOPER, District Judge**

The plaintiff, Lamonica Cross (the "plaintiff"), brought this action against the defendant, State of New Jersey, Division of Criminal Justice ("DCJ"), alleging claims under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq. ("Title VII"), and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 et seq. ("NJLAD"). (See dkt. entry no. 1, Compl. at ¶¶ 4-5.) The Court dismissed all of the plaintiff's claims except her Title VII claim relating to "her allegations surrounding the defendant's decision not to promote her" (the "Remaining Claim"). (See dkt. entry no. 12, 1-26-12 Order.) DCJ now moves for summary judgment in its favor and against the plaintiff, pursuant to Federal Rule of Civil Procedure ("Rule") 56, as to the Remaining Claim (the "Motion"). (See dkt. entry no. 34, Notice of DCJ Mot.) The plaintiff opposes the Motion. (See generally dkt. entry no. 38, Opp'n Br.)

The Court will resolve the Motion on the papers and without oral argument pursuant to Local Civil Rule 78.1(b).  The Court, for the reasons stated herein, will grant the Motion.

I.	SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56, which provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The movant has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party."  Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The burden on the movant may be discharged by pointing out to the district court that there is an absence of evidence supporting the nonmovant's case.  See Celotex, 477 U.S. at 323.

If the movant demonstrates an absence of genuinely disputed material facts, then the burden shifts to the nonmovant to demonstrate the existence of at least one genuine issue for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 460–61 (3d Cir. 1989).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus.

Co., 475 U.S. at 587 (internal quotation marks omitted).  The nonmovant cannot, when demonstrating the existence of issues for trial, rest upon argument; the nonmovant must show that such issues exist by referring to the record.  See Fed.R.Civ.P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor.  Scott v. Harris, 550 U.S. 372, 380 (2007); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).  If the nonmovant fails to demonstrate that at least one genuine issue exists for trial, then the Court must determine whether the movant is entitled to judgment as a matter of law.  See McCann v. Unum Provident, 921 F.Supp.2d 353, 357 (D.N.J. 2013).  "A movant is entitled to judgment as a matter of law if, at trial, no reasonable jury could find for the non-moving party."  Id.

## II.  FINDINGS OF FACT

The plaintiff, who identifies herself as an African-American female, commenced employment with DCJ in August 2000, as a State Investigator II.  (See dkt. entry no. 34-1, DCJ Statement of Material Facts ("DCJ SOF") at ¶ 5; dkt. entry no. 38-1, Pl. Statement of Material Facts ("Pl. SOF") at ¶ 5.)  Prior to her employment with DCJ, the plaintiff served as a municipal police officer for Winslow Township, New Jersey.  (See DCJ SOF at ¶ 7; Pl. SOF at ¶ 7.)  The plaintiff worked in the DCJ Medicare Fraud Unit from 2000-2001, the DCJ Drug Diversion Unit from 2001-2002, and the DCJ Prosecutor and Police Unit from 2002-2007.  (See DCJ SOF at ¶¶ 11-14; Pl. SOF at ¶¶ 11-14.)  In 2007, the plaintiff was transferred to the Office of Insurance Fraud ("OIFP"), Auto Fraud Unit, and in February 2008 she was reassigned to the OIFP, Property and Casualty Unit.  (See DCJ

SOF at ¶ 15; Pl. SOF at ¶ 15.)  In approximately December 2012 or January 2013, the plaintiff was transferred to the OIFP, Medicaid Fraud Unit, where she remains employed as a Detective I.  (See DCJ SOF at ¶ 17; Pl. SOF at ¶ 17.)[1]

On or about July 23, 2009, the plaintiff applied for a promotion to the position of Sergeant-State Investigator.  (See DCJ SOF at ¶ 82; Pl. SOF at ¶ 82.)  Pursuant to a job vacancy notice, candidates for the Sergeant-State Investigator position were required to have a bachelor's degree and a minimum of five years of investigatory experience as a sworn law enforcement officer.  (See DCJ SOF at ¶ 83; Pl. SOF at ¶ 83.)  The promotion process for the position consisted of four phases: "1) Credential Review/Lieutenant Recommendations; 2) Written Interview; 3) Panel Interview consisting of Deputy Chiefs and Deputy Attorneys General; and 4) An executive Interview consisting of senior and executive staff."  (See DCJ SOF at ¶ 84; Pl. SOF at ¶ 84.)  Approximately ninety-six candidates applied for the position.  (See DCJ SOF at ¶ 85; Pl. SOF at ¶ 85.)

The plaintiff passed the first phase of the process – the credential review/Lieutenant recommendations – even though she was not recommended by any Lieutenants for the promotion.  (See DCJ SOF at ¶ 86; Pl. SOF at ¶ 86.)  She passed because she had a bachelor's degree and a minimum of five years of investigatory experience as a sworn law enforcement officer.  The plaintiff also passed the second

---

[1] In 2008, the name of the plaintiff's title was changed from State Investigator II to Detective I. (See DCJ SOF at ¶ 6; Pl. SOF at ¶ 6.)  This change was not a promotional action, rather, it was prompted by a revision of the title series for the criminal investigative staff of the DCJ.  (See id.) The title of Detective I was equivalent to the old title of State Investigator II.  (See Pl. SOF at ¶ 17.)

4

phase of the process – the written interview - which consisted of a written examination that was graded blindly by Lieutenants.  (See DCJ SOF at ¶ 87; Pl. SOF at ¶ 87.)

The plaintiff thereafter, along with approximately thirty of the initial ninety-six applicants, moved onto the third phase of the promotion process – the panel interview. (See DCJ SOF at ¶¶ 88, 92; Pl. SOF at ¶¶ 88, 92.)  The interview panel consisted of the five Deputy Chiefs at the time; of the five Deputy Chiefs, one was a white female and one was an African-American female.  (See DCJ SOF at ¶¶ 90-91; Pl. SOF at ¶¶ 90-91.)

DCJ argues that the plaintiff performed poorly on the phase III panel interview, and it was because of her poor performance on the panel interview that she did not move on to phase IV and ultimately was not promoted.  The plaintiff conversely alleges that DCJ failed to promote her to the position of Sergeant-State Investigator, due to her race and gender.  (See DCJ SOF at ¶ 4; Pl. SOF at ¶ 4.)  In support of her claims, the plaintiff argues that certain questions asked by the phase III panelists were discriminatory in nature.  (See DCJ SOF at ¶ 94; Pl. SOF at ¶ 94.)  The plaintiff claims that two questions in particular were aimed at disclosing whether candidates had previously made Equal Employment Opportunity ("EEO") complaints against DCJ: (1) "Did you ever have a conflict in the DCJ with anyone and how did you resolve it?"; and (2) "What 'negatives' do you perceive to exist within the Division."  (See DCJ SOF at ¶ 95; Pl. SOF at ¶ 95.) The plaintiff testified that she was unable to answer the second question.  (See id.)

The plaintiff contends that these particular questions led her to believe that the panelists were aware of an unrelated EEO complaint she filed previously.  (See id.; see also dkt. entry no. 34-2, DCJ Br. at 2.)  When asked during her deposition whether the

5

two questions were discriminatory based upon race and gender, however, the plaintiff testified: "No, I believe it put me at a disadvantage." (See DCJ SOF at ¶ 96; Pl. SOF at ¶ 96; dkt. entry no. 34-8, Certification of Rimma Razhba, Ex. B-2, Cross Dep. 226:9-13, Jan. 22, 2013.) She also argues that the interview questions varied between the applicants and that the panelists tailored the interview questions specifically toward her. (See DCJ SOF at ¶ 97; Pl. SOF at ¶ 97.)

### III. ANALYSIS

#### A. The McDonnell Douglas Burden-Shifting Framework

An employee alleging a failure to promote claim under Title VII proceeds under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). The first step requires the plaintiff to establish a prima facie case of discrimination. See McDonnell Douglas Corp., 411 U.S. at 802. In order to establish a prima facie case, the employee must demonstrate: (1) that she was a member of a protected class; (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected; and (4) that another, not in the protected class, was treated more favorably. Id.; Fuentes v. Borough of Watchung, 286 Fed.Appx. 781, 784 (3d Cir. 2008).

If the employee succeeds in establishing a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the failure to promote. Id. "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763

6

(3d Cir. 1994). "The employer need not prove that the tendered reason <u>actually</u> motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." <u>Id.</u> (emphasis in original). This is a "relatively light burden." <u>See</u> <u>id.</u>

Once the employer meets its burden, the burden of production shifts back to the employee who must then show that the proffered reason is merely a pretext for actual discrimination. <u>See</u> <u>Fuentes</u>, 286 Fed.Appx. at 784. "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." <u>Fuentes</u>, 32 F.3d at 764 (emphasis and internal citations omitted). "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." <u>Id.</u> at 765. "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" <u>Id.</u> (emphasis omitted). "While this standard places a difficult burden on the plaintiff, '[i]t arises from an inherent tension between the

goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs.'"  Id.

### B. Application to this Case

The Court need not address the prima facie case portion of the McDonnell Douglas burden-shifting framework because DCJ articulates a legitimate, nondiscriminatory reason for not promoting the plaintiff, and the plaintiff failed to produce evidence of pretext.  See Allen v. Nat'l R.R. Passenger Corp. (Amtrak), 228 Fed.Appx. 144, 149-50 (3d Cir. 2007) (declining to address prima facie case portion where defendant proffered legitimate reasons for not promoting and there was no evidence of pretext).

DCJ avers that the reason the plaintiff was not promoted was because she performed poorly during the phase III panel interview.  (See DCJ Br. at 18.)  The panelists confirmed that the plaintiff had difficulty with the interview.  Deputy Chief Beiger testified that the plaintiff did not interview well, that there was a question that the plaintiff did not answer, that the plaintiff seemed like a "deer in the headlights" in response to many questions, and that she was "disappointed" in the plaintiff's interview.  (Id.)  Deputy Chief Binn testified that the plaintiff "was not a clear frontrunner" and that there were candidates who answered all of the questions "and answered them very well."  (Id. at 18-19.)  Deputy Chiefs Binn and Buecker both testified that the plaintiff failed to answer a question regarding how to motivate detectives in hard economic times.  (Id. at 19.)  Deputy Chief Binn testified that the plaintiff should have been able to answer this question, and her inability to do so "hurt her."  (Id.)  Deputy Chief Buecker stated that,

8

when asked the question, the plaintiff's response was that she did not know and would get back to the panelists, but ultimately never answered the question. (Id.) He further testified that the plaintiff "was very unsure of herself during the process" and "seemed very intimidated and overwhelmed." (Id.) Deputy Chief Castellvi also confirmed that the plaintiff failed to answer a question during her interview. (Id.)

At the conclusion of the panel interviews, the panelists ranked the candidates based on their performance during their respective interviews. (Id. at 20.) The plaintiff was ranked second to last – number 30 out of 31 – by the panelists. (Id.) The applicants whom the panelists chose to advance to phase IV – the Executive Interview – were chosen based upon their performance during the panel interviews, and it was unanimously agreed that the plaintiff would not advance. (Id.) Because the plaintiff did not move forward in the process, she was not placed on the final Sergeant promotional list. (Id.) The Court accordingly finds that DCJ has articulated a legitimate, non-discriminatory reason for not promoting the plaintiff.

The plaintiff argues that DCJ's legitimate, non-discriminatory reason "fails." (See Opp'n Br. at 15.) The plaintiff contends that there are inconsistencies that make the reason offered by DCJ unworthy of credence. The plaintiff admits that there were two questions for which she did not have an immediate response. (Id. at 16.) She states that she hesitated to answer the first question – "how she would handle a disagreement with a co-worker" – because the first example she thought of was that she filed an EEO complaint, but she eventually thought of another example and provided her answer. (Id. at 17.) The plaintiff argues that, contrary to Deputy Chief Binn's testimony, she did in

9

fact provide an answer to this question. (Id.) The plaintiff argues that the second question – "what are the negatives within the division" – was "set up for failure." (Id.) The plaintiff maintains that this question is "similar to the question 'when did you stop beating your wife?' as it presumes that the issue under discussion is valid and that you agree that it is or had occurred." (Id.) The plaintiff states that she therefore asked for additional time to answer the question, and when she later offered to provide the panel with her response, "she was told not to bother." (Id.) The plaintiff contends that these questions were part of a subjective interview and argues that such an interview is "a ready tool for discrimination." (Id. at 18.)

The plaintiff also argues that she did not have a "deer in the headlights look" during her interview. (See id. at 19.) She claims that, because she is an experienced interviewer and has worked undercover, a reasonable juror could believe that she would not display a "deer in the headlights look" during an interview. (See id. at 19-20.) The plaintiff then argues that there was testimony that the questions changed as the interview continued, and that such "inconsistent interview techniques" are discriminatory. (See id. at 20.)

This evidence, however does not tend to show that DCJ's legitimate, non-discriminatory reason for the employment decision is pretextual. "An employer must be granted substantial discretion to exercise subjective judgment in the rendering of employment decisions, especially where, as here, the success of the business is largely dependant [sic] upon the individual occupying the position." Johnson v. Penske Truck Leasing Co., 949 F.Supp. 1153, 1172 (D.N.J. 1996). In Johnson, the interviewers

10

indicated that the plaintiff did not perform well in her promotional interview. See id. at 1176. The court acknowledged that "[a]n interview is a subjective procedure," and that "[h]ow an employee presents himself or herself at an interview is often a determining factor in awarding a position." Id. The court continued:

> Johnson's opinion of her interview performance is not relevant. What is critical is the perception of the Interviewers. Johnson's allegation of pretext with regard to her poor interview performance is unfounded. The evidence proffered does not raise a genuine issue of material fact. It does not demonstrate that discrimination was more likely than not a motivating factor in the [employer's] decision, nor does it cast doubt upon [the employer's] legitimate, non-discriminatory reason to defeat summary judgment.

Id.

Just as in Johnson, the plaintiff's perception of her interview performance is not relevant. As such, the plaintiff is in no position to argue whether she had a "deer in the headlights look," as the critical matter is the perception of the interviewers. See id. The plaintiff complains of inconsistent interview techniques, but even though the plaintiff carries the burden of demonstrating this, she concedes that "we do not know if the questions asked of each candidate were substantially similar." (See Opp'n Br. at 20.) The only question the plaintiff provides sufficient proof was actually asked of her and not of other candidates was a question about the duties of a Winslow Township police sergeant. (See id.) This is a fair interview question and does not demonstrate that the plaintiff was treated differently from any other applicants, or that the interviewers demanded more from her during her interview. The Court similarly finds that the two interview questions the plaintiff allegedly had difficulty answering were typical and

innocuous interview questions. The plaintiff claims that she was "uncomfortable with" the two questions and "delayed answering" them. (See id. at 5.) But considering how such behavior would be objectively interpreted by interviewers, it seems reasonable that her failure to respond (or her delayed response) was detrimental to her performance. When asked during her deposition whether the two questions were discriminatory based upon race and gender, the plaintiff herself testified: "No, I believe it put me at a disadvantage." (See Cross Dep. 226:9-13.) DCJ furthermore proffered testimony from the panelists stating that the questions were standard questions asked of all applicants. (See DCJ SOF at ¶¶ 103, 105; Pl. SOF at ¶¶ 103, 105.)

The plaintiff has proffered no evidence that gives rise to a genuine issue of material fact. The evidence rather demonstrates that the panelists perceived the plaintiff to have performed poorly during her panel interview. Due to her performance on the panel interview, the plaintiff was ranked second to last – number 30 out of 31 – by the panelists. (See DCJ Br. at 20.) Also of note, though not dispositive, is the fact that Sherri Stevens, another African-American female, was found by the panel to have performed well during her panel interview. She, along with nineteen other applicants, advanced to the phase IV executive interview. (See id. at 13-14.) The plaintiff's poor performance on the panel interview is a legitimate, non-discriminatory reason for not promoting her. The plaintiff has not proffered any evidence tending to show that DCJ's explanation for the employment decision is pretextual. The plaintiff accordingly is not able to defeat summary judgment.

## IV. CONCLUSION

For the reasons stated, and for good cause showing, the Court will grant the motion for summary judgment. The Court will issue an appropriate order and judgment.

                                                  s/ Mary L. Cooper  
                                          **MARY L. COOPER**  
                                          United States District Judge

Dated: May 14, 2014